May it please the Court, my name is David Woolley and I represent DEPENDABLE. I'd like to reserve four minutes for rebuttal, if I may. DEPENDABLE is a California corporation. It obtained insurance from NAVIGATORS, a New York corporation, through its English subsidiary. It obtained a binder for that insurance, and the binder said it was going to use NAVIGATORS transport form, and the binder said nothing about arbitration. Subsequently, NAVIGATORS sent a document to my client DEPENDABLE called NAVIGATORS Columbus, and it was copyrighted, NAVIGATORS Columbus form, which contained an English law and a very substantial English arbitration. And is that in the record anywhere? Oh, yes, Your Honor. The actual thing that was sent to your client, is that in the record? Yes, it is. Where is it? To be found as the existing... Not the schedules, or the schedules, as you might say, but the... I call them schedules, I'm American. The actual form itself is to be found as the... Not a copy of the form or another version, but the actual thing that was sent to your client. No. It's not in the record. What we have, what we have is NAVIGATORS claim that the Columbus form, as attached to Mr. Paveling's declaration, was the form that was sent. Why don't we have the actual policy, which I think is what we're talking about, are we not? Right. I think it's part of the way the case unfolded that we don't. But we don't have it in front of us. It's very frustrating, because the first thing I wanted to do was to go to the term of the contract and see what it said, and it's not there. And it's not even clear what your client had in front of it when it was thinking what it was thinking. That's part of the problem. We're not entirely certain ourselves. Sometime in the history of this case, we got the piece of paper called the Columbus form, but we don't know when. So in the course of this case, we got the piece of paper called the Columbus form. We know we got it, but we don't know when. We don't have a cover letter with it. So when we filed the suit, we filed a lawsuit here with the binders attached, because the binders talk about the transport form, and we left it to Mr. Leonard's client, Navigators, to prove that they, in fact, sent us the Columbus form. And their method of proof was, as you point out, completely defective. We have the declaration of a Mr. Paveling, a claims adjuster, saying that this is the form that was sent. And we don't know. What was the form that was sent? The Columbus form. So sort of the boiler, may I use this term? Yes. The boilerplate language that we use in all of these kinds of transport policies. No. Mr. Paveling's declaration is, this is the Columbus form that we sent. Not, and if he had said, this is the boilerplate form that we use in all these transport policies, this would be a different case. I agree. But we don't know that this is necessarily the terms of whatever it was that was sent. Right. To your client. We don't know what Navigator's transport policy ever said. We've asked them that question. They've refused to respond in interrogatories. We just don't know. What happened to the English arbitration? This thing's now been before us for two years. Has anything happened? Nothing has happened. Now. Other than an injunction was issued.  An injunction was issued against my prosecuting this case and my client's prosecuting this case. And theoretically, should I visit my mother in England, I'm going to go to jail. I don't think that's going to be the case. But Mr. Leonard's client, I think courteously and I think sensibly, hasn't pursued the arbitration in England. Because all we're going to do is just rack up the legal fees. Well, lawyers don't object to that. I'm sure lawyers object to that all the time, Your Honor. But there is the threat of English arbitration. There isn't the actuality, and we quite agree. We've got mandate and appeal here. And I think, weirdly enough, this is a case where both actually lie. Let me ask you, if you get the case returned to the district court, what would the next step be there? The, it depends upon the instructions that you give to the district court. But if you simply said, this is a valid writ of mandate. If judge decide the arbitrability issue, we would go back to the new district judge, since Judge Minnell is retired, and that judge would take the papers and I would hope would simply rule on the papers whether or not this contract contained an arbitration clause. And if it did, whether the arbitration clause is unconscionable. Do you suppose there's any chance that Judge Minnell did, in fact, so rule in saying this is stay pending proceedings in England, including arbitration? Could we not construe that to mean that she understood that that was contested and that she was saying, I'm telling you now to go ahead and go arbitrate, because that's the right thing to do, so go do that? I think the answer to that is no, because Judge Minnell, I think very cleverly, said I'm not deciding the comity issue. I'm not deciding the arbitrability issue. I'm staying this case under my general labor powers, which I think is the reason why we are here on mandamus. This is a very, a very intelligent judge who found a way not to do something that the Constitution or the Supreme Court says you're supposed to. I think we have supervisory mandamus here for exactly that purpose. Just telling the courts in future that you can't use labor to avoid deciding arbitrability. Arbitrability is one of those things the Supreme Court has said you've got to wrestle with. Kagan. Well, but what if she had thought that this was arbitrable and should be arbitrated? What would she do? She would stay the case pending arbitration? Oh, she would have issued a ruling saying that there is an arbitration clause here. This arbitration clause is valid. Go to arbitration in England. I'm staying the case while you do. So the result would have been the same, stay the case while it gets arbitrated, which is what she did. She didn't do anything, really, did she? She didn't dismiss it. No, she should be staying. She didn't say go arbitrate and I understand that that's the end of that and you'll never be back, goodbye. That's right. That's exactly what she did. She stayed as She stayed and had the case open on her docket for some purpose. She stayed as indefinitely without ordering us to arbitration, noting that it is possible that we could resolve the dispute in arbitration in England. But she did not make the arbitrability decision. Well, how could she? Nobody provided her with the underlying contract document. Oh, I think, you know, the point you're making I had never considered, but in fact it means I win. It means I win. It's not my argument is there isn't an arbitration agreement. Well, we don't know what there is because there isn't any evidence one way or the other as to what the agreement is. All you have are the binders, which are not the sum total of the insurance contract. Isn't it the duty of the person claiming that there's arbitration to show there's arbitration? I would think so, and I certainly have a few questions for your opponent when he gets in. Good. I'm glad to hear that. But she could have decided it. I don't think either of us would have been here on an argument that she didn't have the proof of an arbitration agreement if she found one. We'd be arguing that the arbitration agreement wasn't properly incorporated and that it was unconscionable and the particular agreement was unfair. But I hear your point. It's funny. I had never literally considered it until you had raised it, sir. But from my perspective, that's where it gets paid the big bucks. Oh, I'm glad much my opinion. But from the perspective of a litigation where there are burdens of proof, my client says I have a dispute with Navigators. Navigators claims there is an arbitration clause. It is Navigators' burden to prove there's an arbitration clause. Well, another possibility is that the English court clearly had decided, rightly or wrongly, that arbitration was appropriate, and perhaps Judge Minnello was deferring to the English court as a matter of comedy under national law. A, the English court didn't decide that arbitration was appropriate. The English court simply enjoined the prosecution of the California case. And the reason it didn't was because it was forbidden by English law from doing so. Well, the English court paved the way for arbitration and only arbitration to be pursued to resolve the case. It may have, but it didn't order arbitration, and it can't do so. And I urge the court to look at the Declaration of Stuart Weinstein. Whatever I say is argument. Professor Weinstein has given a very clear outline of the English arbitration law and how it disagrees or differs from America. And one of the points he makes, it's paragraph 16 of Exhibit 9 in the record, is that under English law and under the Scott versus Avery clause, the judge was forbidden from deciding the issue of arbitrability in England in this case. All the judge could do is say, you claim there's an arbitration clause, you claim that there's a Scott versus Avery clause, therefore, I am going to enjoin any litigation until the arbitrator decides arbitrability. Well, that's one way to look at it. Another way to look at it is, and again, this is a question, I suppose, more for your opponent, you filed your action first, and then he runs into an English court and tries to get an injunction in order to tell a US district court that it can't proceed. Thank you for raising that point. I entirely agree. There's a second stage to this case. And at one stage in front of Judge Manella, we asked to amend our pleadings or to supplement it, to add bad faith to exactly that point. There is a smell, an odor, a problem here. We could have resolved this issue under arbitrability in front of a federal district judge in accordance with 8 U.S.C. 3 or 8 U.S.C. 4, whichever one we happened. We didn't need England to come in and kick us around. It did, that's England, a different procedure, a different law, a very, very different structure. And that's part of the unconscionability and the unfairness argument we have here. We think of England as being, you hear me, I'm English. We think of England as being a perfectly civilized legal society, and it is. It has different procedures from ours. It doesn't agree with our view of arbitration in any way at all. It has an umpire, and I've tried to explain the umpire system in the brief. It is as if Judge Coleman and Judge Wilken disagreed on some minor point in the opinion, and they couldn't reach agreement, that would mean Judge Reinhart could then decide whatever he wanted, regardless of either of your views. It is not a collegial system. It is not the way we think of a panel of three arbitrators as working. That's the English system, and it's specifically allowed in this contract. England also allows, one of the things we don't like, that is to have navigators have the ability to sue for premiums, but to force my client only to arbitrate. We consider that to be an improper use of arbitration. We have the thing that really gets to me is the arbitrability issue. For many years, arbitration was a disfavored ruling. And when we enacted the Arbitration Act, many, many years ago, we wanted to make sure that people weren't being coerced into arbitration. And so we have this very specific rule that a district judge must decide the issue of arbitrability first, if the issue legitimately exists. England has exactly the opposite rule. The parties may stipulate that a judge may not decide that issue, and the judge is forbidden from deciding it. There's this very complex Kearser case in the circuit, which says you simply can't stipulate into or out of the standards of review created under the Arbitration Act. Thank you very much, Your Honor. That's all I have. Thank you, Your Honor. May it please the Court, Arthur Leonard for Navigators. And I would like to address some of Judge Tallman's questions, perhaps, about how this policy was negotiated and whether or not there is a copy of the policy in the record. I think we understand who the players were, but where's the proof? That's the problem I'm having as a question of evidence law. What is it that the district court can look to on this record? The declaration of David Paveling, who is the Navigators' claims adjuster, sets forth the fact that this policy was negotiated, not with dependable directly, but rather through their professional marine insurance broker, Capacity Marine Managers. And it is with Capacity Marine Managers- Does it not have in its file a signed copy of a contract between the broker and the underwriter? As to whether or not there's a- I don't believe there would be such a thing as a signed contract. It's not something that's signed. It's an insurance policy that's issued. But the policy would include at least the signature of the underwriter to the effect that it is bound by- I don't believe so, because the form which is attached to his declaration, which is the- Right. I saw the Columbus- Right. Which I assume just means the boilerplate language that we use in transport- In transport coverage, this is the policy that we have. We call it Columbus wording. Right. That's what was provided. That's what was issued. And in the complaint, and I think it's- I can't remember which paragraphs specifically, but they admit that that policy was issued. They- So if the district court on remand, if we send it back, were to try and determine whether or not there was an arbitration provision included within the terms, wouldn't the district court also need to look at any communications between the broker and the London underwriter? I think so. And I think that's the key to that, and the missing link, if you will, if that's the issue, is the broker. And one of the reasons that that discovery wasn't done is it kind of defeats the purpose of having an arbitration clause and saying that this has to be arbitrated in London if all of a sudden we're thrust in the position of having to undergo discovery here. Secondly, I think it subjected us to some attack that by participating in discovery in the district court, we have waived our position that this was exclusively subject to London arbitration. It does seem a little odd to me that as soon as Mr. Woolley files his action in district court here, that your client immediately goes into an English court and gets an injunction to stop the district court proceeding from going forward, and then you come in and say because there's an arbitration clause, but the response is we didn't agree to arbitration, why the district judge shouldn't first resolve that initial question before it decides whether or not to stay proceedings and grant comity or whatever it's going to do in favor of the English arbitration? Well, I think the initial issue is the issue of comity. And I think in the record the But you don't get to comity until you first determine what the obligations are under the agreement. I disagree, because I submit that comity provides that there has been a decision of the English court that meets all the standards that American law provides for recognizing the doctrine of comity. And clearly the record is that they had an opportunity to respond. Proof was submitted to the English judge of what Navigator's position was, also what the Pendable's position was. Everything was presented to the judge. But the judge didn't decide this on the issue of comity. No, I'm talking about the English court now. So the English court But you're answering that because of the comity question. I submit that the Judge Minella, the district court, did decide on the issue of comity, even though she didn't use the word comity, because, excuse me, by definition comity is the recognition that a district court or a court in the United States will give to a foreign judgment. And she clearly put in her order, you know, in light of the English proceedings. And all that was before her. And so I think even though she didn't use the word comity Well, but in light of the proceedings, they mean they stated, here are proceedings because of the English proceedings. Correct. You didn't say because the English court issued an injunction. If she said in light of the injunction, if she was giving some deference to the injunction, she made it clear that she was staying it because it's efficient for her not to have to decide the case. I think it reduced her workload. I mean, I think a fair reading of her order, though, when she says in recognition of the English court and what the English court has decided, I'm going to stay this case. No, she said accordingly in light of the English proceedings. Proceedings. We stay it for those proceedings. Proceedings. Not because of the order. I don't think you can clearly read her order as doing anything other than what she says. I understand. She's doing it in order to control her own docket and calendar. I understand the distinction that you're making, but I guess I read it that she was saying part of what she considered was the fact that an English court had determined that this was comparable to arbitration. Well, if the English court had determined it, we wouldn't have the issue of comedy. Pardon me? If the English court had not – proceedings weren't there, we wouldn't have an issue of comedy at all. We wouldn't have an issue of comedy. It is not your view that she implicitly was deciding that arbitration was proper when she said it should go to England for proceedings including arbitration. I think on the record before her, I think anyone would have to conclude that arbitration was proper. I admit she didn't expressly state that in her order, but I think, again, on the record, that it would have been proper. And I think the analysis is if it's not under the doctrine of comedy, it's under Chapter 2 of the Federal Arbitration Act, which is … But I still find it curious, Mr. Leonard, that in the face of a response from the insured that we never agreed to arbitration and we don't agree that this boilerplate clause was applicable in our particular contract of insurance, why you are not under some obligation to produce irrefutable proof that there was an arbitration clause? Their position that they never agreed to this is based on their argument that the schedule that they received when it described the coverage said navigators transport wording. And their argument is, well, we never received navigators transport wording titled as such. The schedules are nothing more than what we would call domestically binders, right? Right. And so why can't I look at those binders and say, aha, there is an incorporation by reference here to the Columbus transport terms, which must be part of this contract of insurance? Because when it says that the type of coverage affected is the transport wording, that is just a generic term for Columbus wording. But you have … in order to get where you want us to be, we have to conclude that the agreement included all of the provisions of the Columbus wording, correct? The agreement between the parties, which is not the schedule. The schedule … No, no. I understand that. And I'm still wrestling with the form of the evidence that was before the district judge. And I think Mr. Woolley is correct that the burden is on you as the party asserting the right to arbitration to prove to the satisfaction of the district court that this was an integral part of the agreement between the parties. So that when you move for a stay of the proceedings in the district court here, the district judge can be satisfied that the reason for granting the stay is to let the arbitration proceedings go forward in England. And I'm troubled by the fact that your client hasn't done anything to pursue the proceedings that occurred in England were injunction proceedings. And once that injunction issued, the proceeding was over as far as the Queen's Bench was concerned. Again, I would submit that we did provide to the district judge the Columbus wording. Clearly, the district court had that Columbus wording before it. And there was nothing else. I mean, the schedules say there's something else. And the only something else there is, right, is the Columbus wording. Sotomayor, there is no transport wording around. There's no document entitled transport wording captioned as such. Again, the transport wording is the generic reference to the Columbus wording. And as we mentioned, the policy itself, it says under the caption, Navigator's Columbus wording, coverage for transport operators worldwide. I mean, it's the transport insurance. And it's, you know, the insurance that they wanted. Right. I mean, it gives you the details of what the coverage amounts are, what time the insurance starts, when it ends, what the exclusions are, you know. But you still have to look to more than the binders in order to determine what the terms of the agreement are. The agreement is the insurance policy and the binder. In the schedule letter, the binder says, attaches to and forms a part of. Mr. Horwich, I guess where I'm having my problem, and I don't want to get too hung up on this, is that if we were in the middle of a trial and the state of the record was as it existed before Judge Minella, I would find that there had been a failure of proof on the part of the insurance company to adequately prove up what the terms of the agreement were. And I'm troubled, and if that's true, then I'm troubled by how Judge Minella could have made a determination that this was a dispute that was subject to English arbitration, and therefore, she was entering a stay in order to let that arbitration proceeding proceed and be concluded. Again, she had the Columbus wording, and the declaration of David Paveling was that, you know, this Columbus wording was the wording of the insurance policy that was negotiated through Dependable's broker and provided to Dependable, which Dependable admits, and upon that policy, they in fact sue. I mean, their whole case is predicated on that insurance policy. So I don't, to me, there's really not an issue that that's the insurance policy. I appreciate their argument more as, yes, this is the insurance policy, but we don't agree that these English arbitration and form selection clauses are enforceable. Alito How would the adjuster be competent to authenticate that document as it relates to Mr. Woolley's client? He wasn't involved in the negotiation. Verrilli, Jr. He was not involved in the negotiation. Alito He's not the custodian of records for now? Verrilli, Jr. Well, he's responsible for adjusting the claim. Alito Right. Verrilli, Jr. And so he would have to be the one to interpret purposes of adjusting the claims as a claim made, you know, under this policy. Alito So he might be able to authenticate it as a business record on which he relies  Verrilli, Jr. He has to deal with it on a daily basis, I assume. He has 38 years, I think, in the insurance industry and 10 years or so maybe with Navigators. So I think he's familiar with it. Ginsburg Why have you not pursued the arbitration in England? Is it a professional courtesy to the other side by having this proceeding or? Verrilli, Jr. I think, I personally, I don't know. And I can only assume that, well, two things. Ginsburg Well, it's your client who's not pursuing it, I think. Verrilli, Jr. Well, for two things. Ginsburg Well, I guess they should pursue it. Verrilli, Jr. It's their, they're the ones that if anyone wants to pursue it, it should be them. They're the ones that are making the claim. So, you know, there's no interest in ours to pursue it there. Secondly, we do have this proceeding here. And it is, you know, it's expensive to be litigating two things at the same time. Ginsburg Do you concede that you owe them some money? Verrilli, Jr. We, on one claim, I believe, yes, we concede that we do owe them some money on the first claim. I don't believe so. Ginsburg Why not? Verrilli, Jr. Because of the disputes in this litigation. But that's my understanding. If I may, well ---- Ginsburg Do you want to respond to the unconscionability arguments at all, or the  Verrilli, Jr. Well, I mean, I think the analysis is, if we forget about Comedy and if we had just come into court and said we would like this case stayed here because there is an arbitration agreement, I think the analysis is under Chapter 2 of the Federal Arbitration Act. And that's the United States recognition of the Uniform Convention on the Convention on the Recognition and Enforcement of Foreign Arbitral Rewards. And under that, as we brief, there's a specific analysis that the Court must go through to determine whether or not something is subject to foreign arbitration. And the ---- and it's important. The case is Walker and Zanger v. Stone Design. And it says if the elements are there, the agreement has to be enforced unless the agreement is void, inoperative, or incapable of being performed. So I think their argument is that, well, it's void because it's unconscionable. And the response is, and this is from the case referring to something being void, is that such language has to be interpreted narrowly, encompassing only those circumstances that can be neutrally applied on an international scale such as fraud, mistake, duress, and waiver. So there are very narrow exceptions to the enforcement of the arbitration agreement. And for that reason, I think any analysis under California law in a GRAMPA decision doesn't apply to this case. That case didn't pertain to a foreign arbitration agreement. So I think that's the analysis that has to be gone through. So your argument is that the treaty basically overrides California law? Absolutely. Under the Supremacy Clause? Yes. Under Chapter 2 of the Federal Arbitration Act. And then, again, I think that Walker and Zanger case is the case on that issue. Just on more general terms about unconscionability, I think there's nothing that's shocking to the conscience. There's nothing unconscionable about a provision that says, you know, we agree between ourselves in return for a reduced premium that this is how these things are going to be resolved. We're going to go to London arbitration because London has a well-established, suitable facility for arbitrating coverage claims. And we've cited cases where those types of provisions have been enforced. There's nothing – I don't think there's anything unconscionable about that. Particularly, I mean, they – our position is clearly, of course, that that's what was agreed to. So, you know, we don't think under any analysis it's unconscionable. The – it's a 19-page policy. It's not a very long policy. All this stuff is clearly set out. Again, it was agreed to through their professional broker. My guess is, and there is no evidence of this, that the broker was very familiar with this type of term – of these terms, knew the policy very well. And, of course, the knowledge of the broker is imputed to the insured. So I don't think that the broker would be surprised that there was an English arbitration clause in any of this. MS. GOTTLIEB I'm going to ask your opponent why he didn't respond to the English proceeding. And maybe he'll say something like it would be a waiver and he'd be subjecting himself to jurisdiction and so on. So could I ask you first, since you won't have another chance, whether he could have, with impunity, made some sort of special appearance and responded in England and contested this injunction? CHIEF JUSTICE ROBERTS I believe so, absolutely. It was given the opportunity. MS. GOTTLIEB Maybe it would have constituted a general appearance, some kind of waiver. CHIEF JUSTICE ROBERTS I don't know the English law on that. No further questions.  CHIEF JUSTICE ROBERTS Thank you very much. CHIEF JUSTICE ROBERTS Yes. It would have been a waiver. And since the English judge has no ability himself to decide arbitrability, he would simply have instructed my client to arbitrate. Then I would have been MS. GOTTLIEB Not to arbitrate, to go to the arbitrator and have the arbitrator decide whether it was arbitrable. CHIEF JUSTICE ROBERTS Right. MS. GOTTLIEB There's no policy here. There's no agreement. This isn't arbitrable. Then the arbitrator would have sent it back to the court, which would have said, guess what, no arbitration, go back to the U.S., where you filed your suit first. That could have happened. CHIEF JUSTICE ROBERTS That's true, but you have more faith in the arbitrator or the chairman than I do, because remember we have this system. I could pick an arbitrator who would say, of course, there's no arbitration clause here. And Mr. Leonard's client could pick an arbitrator who would say, of course, there's no arbitration clause. And they then have to do it. THE COURT I hate to tell you, but we do do that in the United States. CHIEF JUSTICE ROBERTS Oh, yes, Your Honor. THE COURT We do. THE COURT We have lots of arbitrations where the employer picks one arbitrator, the union picks another, and then there's a neutral. And he's the one who decides. It sounds like the British system. CHIEF JUSTICE ROBERTS But the neutral here, according to the contract, can only be picked from the Union of International Adjusters, the trade group for navigators. And in England, let's assume we have these two arbitrators disagree. Then they no longer take any part in the case. The chairman, this man from the trade union for the employers, says, this is my ruling. That's the problem with the English legal system. THE COURT The only problem with that is if he's not really a neutral arbitrator. CHIEF JUSTICE ROBERTS Right. And that's what the scissorhands. THE COURT The condition is he comes from a group. A trade group of insurance company sponsors or what have you. And that's the scissorhands case that we've quoted in the brief. Mr. Leonard referred to the case. KAGAN Maybe you wouldn't have prevailed had you gone to England to try to contest this injunction. But would there have been any downside other than a trip to visit your mother? CHIEF JUSTICE ROBERTS A huge downside. That's the Recognition and Enforcement of Arbitral Awards Convention. If I contest arbitrability now, a Federal judge under American law looks at the contract and says, ah, yes, you've agreed to English law, I'll apply English law, or you haven't agreed to English law, I'll apply American law, and he decides the arbitrability of the contract. If I go to arbitration in England and the award of the arbitrate in England that he has arbitrability must be judged under English law. KAGAN Why didn't you just go to court in England and say, don't issue this injunction? I never agreed to arbitration. Maybe you would have lost on that, but what's the downside of trying? CHIEF JUSTICE ROBERTS I'd certainly have lost. English law forbids the judge from accepting my argument that there was no arbitration agreement. That's the Scott v. Avery clause and the point of Professor Weinstein's paragraph 16 of his tab 9 of our exceptional record. An English judge may not decide arbitrability. It is a matter for the arbitrator alone, absolutely contrary to American law. KAGAN Okay. Well, then why not go to the arbitrator and say, by the way, we never agreed to this, so send us back? CHIEF JUSTICE ROBERTS Because if we have my arbitrator and navigator's arbitrator disagreeing, the trade union employer's arbitrator's arbitrator is an unfair arbitrator who has to make that decision. KAGAN So you feel fairly confident that no such arbitrator would ever conclude that he or she lacks jurisdiction to proceed with the arbitration? CHIEF JUSTICE ROBERTS Yes, Your Honor, I do. Thank you very much. Kagan, I'm sorry, can I ask one more question? You didn't have any transport wording. You had the Columbus wording. You knew there was something besides the schedules. And you knew you had the Columbus wording and nothing else. CHIEF JUSTICE ROBERTS But the Columbus wording is copyrighted. It is clearly not transport wording. Whatever it is, it is copyrighted Columbus wording. Kagan But whatever it is, you didn't have it. CHIEF JUSTICE ROBERTS Right. You're exactly right. Kagan So you don't know, you don't have any idea what your contract said. CHIEF JUSTICE ROBERTS Correct. That's one of the problems. That's one of the problems with insurance, actually, commercial insurance. The things catch up with you months, years later. And Mr. Leonard pointed something out that I'd actually forgotten. There is this in, we have navigators with an English broker. My client has an English broker. The English broker had a Florida broker, Capacity Marine. And then there was my client. Somewhere in this chain, the policy got lost or something happened. That's one of the reasons we were at loggerheads here. And one of the reasons why we had this point about what is the evidence of the contract. Thank you very much, all. CHIEF JUSTICE ROBERTS Thank you. Thank you. Thank you both very much. Case discharges will be submitted. Court will stand in recess for the day. All rise. Let's come to the session. When did we get the mushrooms? We were, uh, we were sitting around here. I've got the idea. I don't think you can pay for them, please. I paid, she took. I don't know.
judges: Reinhardt, Tallmkan, Wilken